# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BOBBI JO ALLEN,<br><br>Defendant. | Case No. CR10-1004<br><br>ORDER FOR PRETRIAL DETENTION |

On the 2nd day of April, 2010, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by her attorney, Jill M. Johnston.

## RELEVANT FACTS

On March 18, 2010, Defendant Bobbi Jo Allen was charged by Indictment (docket number 2) with possessing with the intent to distribute marijuana within 1,000 feet of a school. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on June 1, 2010.

Investigator John Pace of the Dubuque Police Department, who is currently assigned to the Dubuque Drug Task Force, testified regarding the circumstances underlying the instant charge. On March 31, 2009, Dubuque police officers were called to Defendant's residence to investigate a report of a domestic disturbance. In conducting a "welfare check" within the residence, officers found items "consistent with the manufacture of methamphetamine," including pseudoephedrine, iodine crystals, phosphorus, and numerous cooking vessels. Also found was 60 grams of marijuana in two bags within a Harley Davidson tin. Officers also found a digital scale and "gem" bags,

1

which may be used for the redistribution of marijuana. A small amount of methamphetamine was also found in Defendant's purse.

On the following day, Defendant was interviewed at the Dubuque Police Department. Defendant came to the police station voluntarily and was not arrested following the interview. During the interview, Defendant admitted that she had been living at the residence for a couple of months. Defendant admitted that the marijuana belonged to her, but told the officers that it was "not for sale." However, Defendant admitted that she traded marijuana for boxes of pseudoephedrine. Pseudoephedrine can be used in the manufacture of methamphetamine.

According to Investigator Pace, another resident of the house, Ronald Eichenberger, was interviewed on April 2, 2009 and "eventually" told investigators that the items seized which were consistent with the manufacture of methamphetamine belonged to him. Eichenberger apparently told authorities that he believed Defendant was pregnant with his child. As it turned out, Defendant was pregnant with the child of Anthony Blackburn.

According to the pretrial services report, Defendant is 41 years old. Prior to her recent arrest, Defendant lived in Dubuque with Anthony Blackburn and their 4-month-old child.[1] Also living at the residence was Blackburn's sister, Angela Ingles, and her three minor children. Defendant also has three adult children from a prior marriage.

Defendant earned a GED while incarcerated in Wisconsin in 2001. Defendant has only a sporadic work history, and was last employed in the latter part of 2008. Defendant described herself in good physical health, although she is currently undergoing mental health counseling for anxiety, depression, and post-traumatic stress disorder.

Defendant has a long history of drug abuse. Defendant admitted that, on average, she smoked about one marijuana cigarette per day from the age of 12 until December 7,

---

[1] It should be noted that Anthony Blackburn has multiple convictions for assaultive behavior, including three convictions for domestic assault, a misdemeanor conviction for child endangerment, and a felony conviction for conspiracy to manufacture methamphetamine within 1,000 feet of a school.

2009.[2] In addition, Defendant told the pretrial services officer that she was a daily user of methamphetamine from age 25 until about 10 months ago.[3] Her infant son tested positive for marijuana exposure at birth, and the Iowa Department of Human Services ("DHS") is currently "working with the defendant." According to the pretrial services report, Defendant has been compliant with DHS requirements, including attending substance abuse treatment and providing clean urine samples.

Defendant has an extensive prior criminal record dating back to 1993. (According to Defendant, it was at about that time that she started using methamphetamine.) In 1998, Defendant was convicted of three counts of forgery in Grant County, Wisconsin. In 1999, Defendant was convicted of forgery in Dubuque County, Iowa. Defendant received suspended prison terms in both states and was on probation in both states following March 16, 1999.

In October 1999, Defendant was charged with domestic abuse assault with intent or display of a weapon, and in November 1999, Defendant was charged with domestic abuse assault without intent causing injury. Both charges were later dismissed, but not until after Defendant had failed to appear on two occasions. It was also during that time that Defendant failed to appear for a probation violation hearing in the earlier Dubuque County forgery case.

On March 9, 2000, Defendant was charged in Dubuque County with conspiracy to manufacture methamphetamine. On March 14, 2000, Defendant was charged in Iowa County, Wisconsin, with manufacture/delivery of methamphetamine. In June 2000, Defendant was sentenced to 30 months in prison on the Wisconsin charge. In January 2001, Defendant received a 10-year suspended prison term on the Dubuque County charge.

Defendant was in prison in Wisconsin from June 2000 until March 2002 or March 2003. (An earlier presentence investigation report indicated Defendant was imprisoned

---

[2] It was apparently at about that time that her child was born.

[3] Apparently Defendant stopped using methamphetamine shortly after she learned that she was pregnant, but continued to use marijuana until the baby was born.

until March 2003, but Defendant told the pretrial services officer that she was released in March 2002 and completed one year parole supervision before being discharge in March 2003.) On April 17, 2003, Defendant was charged in Clinton County, Iowa, with conspiracy to manufacture methamphetamine. She was sentenced to 10 years in prison in August 2003 and was paroled in December 2004.

In May 2005, while on probation in Dubuque County and parole in Clinton County, Defendant was charged with forgery in Linn County. At about that time, Defendant was also charged with theft in the fifth degree in Linn County. As a consequence, Defendant's parole was revoked and she was placed at the Gerald Hinzman Center on work release. Defendant returned to street parole in January 2006 and she received a suspended prison term on the forgery charge in February 2006.

In April 2007, Defendant was charged with theft in the fifth degree. In June 2007, Defendant was charged with possession of a controlled substance. As a consequence, Defendant's parole was revoked and she was sent back to the Gerald Hinzman Center. Defendant was discharged from parole in December 2007.

The events which give rise to this charge occurred on March 31, 2009. On April 11, 2009, Defendant was charged with possession of marijuana – second offense. Following a traffic stop, marijuana was found in Defendant's wallet. She failed to appear on the charge in June 2009, and a warrant was issued for her arrest. At the time of hearing, however, it was proffered that Defendant surrendered herself after she learned that the warrant was pending. In May 2009, Defendant was charged and later convicted in Dubuque County of possession of drug paraphernalia.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with possessing with the intent to distribute marijuana within 1,000 feet of a school, one of the offenses found in § 3142(f)(1). Also, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's

evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with possessing with the intent to distribute marijuana within 1,000 feet of a school. The evidence against the Defendant is strong. Marijuana was found in Defendant's home, together with a digital scale and packages consistent with redistribution. Defendant admitted that the marijuana belonged to her, and also admitted that she would trade marijuana for boxes of pseudoephedrine. While Defendant has long ties to the Dubuque community, she is not employed and has only been sporadically employed in the past. It is apparent that the Defendant has a substantial substance abuse problem. She admits using methamphetamine daily for 15 years (while not incarcerated), until she became pregnant last year. Defendant continued to use marijuana until her child was born, and the child tested positive for marijuana exposure at birth. Defendant also has a substantial criminal record, with at least eight prior felony convictions, including three prior convictions relating to the manufacture of methamphetamine. A substantial number of Defendant's crimes were committed while she was on probation or parole. In addition, Defendant has violated the conditions of her

parole by continuing to use controlled substances, failing to appear for scheduled office appointments, failing to submit to urinalysis testing on five occasions, and not following through with required substance abuse treatment.

The Government has the burden of proof in this regard. It is aided in this case, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). If the Court finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. The return of an Indictment by a Grand Jury is sufficient to support a finding by the Court that there is probable cause to believe that the Defendant committed the offense identified in the Indictment. *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987). In a "presumption case," the defendant bears a limited burden of production--not a burden of persuasion--to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met her burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained

prior to trial. Defendant was advised in open court of her right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (April 1, 2010) to the filing of this Ruling (April 2, 2010) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F).

DATED this 2nd day of April, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA